UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

**JANE PARKIN**, *et al.*,

   Plaintiffs,

 v.

**AVIS RENT A CAR SYSTEM LLC**, *et al.*,

   Defendants.

No. 22-05481

**OPINION**

---

**APPEARANCES**:

Lindsey H. Taylor
James E. Checchi
CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO
5 Becker Farm Road
Roseland, NJ 07021

 *On behalf of Plaintiffs.*

Jessica Greer Griffith
MCDERMOTT WILL & EMERY LLP
One Vanderbilt Avenue
New York, NY 10017

 *On behalf of Defendants.*

**O'HEARN, District Judge.**

 This matter comes before the Court on two motions from Defendants Avis Rent a Car System, LLC ("Avis"), Budget Rent a Car System, Inc. ("Budget"), and Avis Budget Group, Inc. ("ABG") (collectively "Defendants"): (1) a Motion to Dismiss (ECF No. 17) the Complaint filed by Plaintiffs Jane Parkin and David Hughes, on behalf of themselves and all others similarly situated ("Plaintiffs") pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) and (2) a

Motion to Strike (ECF No. 17) pursuant to Federal Rule of Civil Procedure 12(f). The Court did not hear argument pursuant to Local Rule 78.1. For the reasons that follow, Defendants' Motion to Dismiss is **GRANTED in part** and **DENIED in part** and Defendants' Motion to Strike is **DENIED**.

## I. Factual Background and Procedural History[1]

Plaintiff Jane Parkin is a citizen of the United Kingdom who rented a vehicle from Budget Rent a Car System, Inc. ("Budget") from September 16, 2016, until September 23, 2016, in Boston, Massachusetts. (Compl., ECF No. 1 ¶ 5). Plaintiff David Hughes is a citizen of the United Kingdom who rented a vehicle from Budget on three occasions: in Boston, Massachusetts from September 28, 2017, until October 1, 2017; in Sarasota, Florida from April 3, 2018, until May 5, 2018; and in Tampa, Florida from October 13, 2019, until November 11, 2019. (Compl., ECF No. 1 ¶ 5). When renting the cars from Budget, both Parkin and Hughes purchased Additional Liability Insurance ("ALI") or Supplemental Liability Insurance ("SLI") from a third-party insurer. (Compl., ECF No. 1 ¶¶ 5–6).

Budget and Avis are wholly owned subsidiaries of ABG. (Compl., ECF No. 1 ¶ 6–9). Plaintiffs allege that Budget, Avis, and ABG have combined operations, and ABG actively directed and controlled the daily activities of both Budget and Avis. (Compl., ECF No. 1 ¶ 9).

Defendants claim that Avis and Budget are separate legal entities with separate corporate leadership. (Def. Br., ECF No. 17-1 at 8 fn. 1). Yet, both Avis and Budget have two identical corporate directors who serve both companies at the exact same address. (Ex. A, ECF No. 17-3;

---

[1] Since the Motion comes before the Court under Rule 12(b)(6), the Court accepts the factual allegations in the Amended Complaint as true and will view all facts in the light most favorable to Plaintiffs as non-moving parties. *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005).

2

Ex. B, ECF No. 17-4). Defendants also claim that ABG is a parent holding company. (Def. Br., ECF No. 17-1 at 8).

Plaintiffs allege that when they rented cars from Budget, the customary method was to purchase a package which included a rental car, a collision damage waiver, and ALI/SLI insurance for a single price. (Compl., ECF No. 1 ¶ 17). The form agreement for the package stated that the rental company would obtain ALI/SLI insurance from a third-party provider. (Compl., ECF No. 1 ¶ 18).

However, Budget did not obtain insurance from a third party. (Compl., ECF No. 1 ¶ 18–19). Rather, if a Budget customer were in an accident and liable to a third party for damages, Budget would instead indemnify the customer for that liability. (Compl., ECF No. 1 ¶ 19). This practice departs from the actual contracted agreement where Budget agrees to provide the ALI/SLI insurance in a rental package. (Compl., ECF No. 1 ¶ 21).

Plaintiffs have separated their claims into three classes of people: the national class, the Massachusetts class, and the Florida class. (Compl., ECF No. 1 ¶ 24). Plaintiffs allege three claims against Defendants: (1) breach of contract (Count I), (2) fraudulent misrepresentation (Count II), and (3) violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count III). (Compl., ECF No. 1 ¶¶ 35–52).

On September 9, 2022, Plaintiffs initiated this lawsuit. (Compl., ECF No. 1). On November 14, 2022, Defendants filed this Motion to Dismiss pursuant to Federal Rule of Civil Procedure 9(b) and Federal Rule of Civil Procedure 12(b)(6). (ECF No. 17). Defendants also filed this Motion to Strike if any claims survived their Motion to Dismiss. (ECF No. 17). On December 28, 2022, Plaintiffs filed a brief in opposition to Defendants' Motion to Dismiss and Motion to Strike. (ECF

3

No. 30). On January 10, 2023, Defendants filed a reply brief. (ECF No. 31).

## II. Legal Standard

### A. 12(b)(6)

A pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A district court, in deciding a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007) (quoting *Scheuer v. Rhoades*, 416 U.S. 232, 236 (1974)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("*Iqbal* . . . provides the final nail in the coffin for the 'no set of facts' standard that applied to federal complaints before *Twombly*."). A motion to dismiss should be granted if the plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

### B. Motion to Strike

Federal Rule of Civil Procedure 12(f) permits courts to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Motions to strike under Rule 12(f) are "highly disfavored," *Thompson v. Real Est. Mortg. Network, Inc.*, No. 11-1494, 2018 WL 4604310, at *2 (D.N.J. Sept. 24, 2018), and "will generally 'be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues.'" *Garlanger v. Verbeke*, 223 F. Supp. 2d 596, 609 (D.N.J. 2002) (quoting *Tonka Corp. v. Rose Art Indus., Inc.*, 836 F. Supp. 200, 217 (D.N.J. 1993)). "[W]here the challenged material is redundant, immaterial, impertinent, or scandalous, a motion

4

to strike should not be granted unless the presence of the surplusage will prejudice the adverse party." *F.T.C. v. Hope Now Modifications, LLC*, No. 09-1204, 2011 WL 883202, at *1 (D.N.J. Mar. 10, 2011).

### III. Discussion

Defendants move to dismiss all three of Plaintiffs' claims: breach of contract (Count I), fraudulent misrepresentation (Count II), and violation of the Florida Deceptive and Unfair Trade Practices Act (Count III), and further move to strike Plaintiffs' class allegations. For the reasons that follow, the Court will grant in part and deny in part Defendants' Motion to Dismiss, dismissing Counts II and III, and deny Defendants' Motion to Strike.

#### A. Claims Against Avis and ABG

Defendants contend that Avis and ABG should be dismissed because Plaintiffs have not alleged any wrongful conduct on their part and have alleged only "boilerplate and vague allegations of relatedness between the three defendants." (Def. Br., ECF No. 17-1 at 5). Plaintiffs respond that they are not pursuing an alter ego liability theory, but rather seek to hold Defendants Avis and ABG liable based on direct corporate liability and, alternatively, agency liability. For the following reasons, the Court declines to dismiss the claims against Avis and ABG.

##### 1. Direct Corporate Liability

Parent companies are not per se liable for the acts of their subsidiaries merely because they own them. *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 484 (3d Cir. 2001). However,

> it has long been acknowledged that parents may be "directly" liable for their subsidiaries' actions when the "alleged wrong can seemingly be traced to the parent through the conduit of its own personnel and management," and the parent has interfered with the subsidiary's operations in a way that surpasses the control exercised by a parent as an incident of ownership.

5

*Id.*, at 486–87 (quoting *United States v. Bestfoods*, 524 U.S. 51, 64 (1998)).

Plaintiffs' Complaint pleads a complicated and intertwined relationship between Defendants: "[ABG] directed and controlled the daily activities of Avis and Budget and totally dominated [them]," Defendants "share[d] the same operational and administrative infrastructure," acted "in concert with each other," and "were integrated and each actively participated in the business practices about which Plaintiffs complain." (Compl., ECF No. 1 ¶¶ 9–12). The Court finds these allegations sufficient at this stage, without the benefit of discovery, to allege a claim based upon Avis and ABG's participation in the alleged conduct.

2. Agency Liability

Discussing agency theory, the Third Circuit has explained:

> When one corporation acts as the agent of a disclosed principal corporation, the latter corporation may be liable on contracts made by the agent. Unlike the alter ego/piercing the corporate veil theory, when customary agency is alleged the proponent must demonstrate a relationship between the corporations and the cause of action.

*Phoenix Canada Oil Co. Ltd. v. Texaco, Inc.*, 842 F.2d 1466, 1477 (3d Cir. 1988) (internal citations omitted). Critical to the agency liability inquiry is "whether the agency relationship existed with regard to the specific transaction or transactions that gave rise to the claim." *Jurimex Kommerz Transit G.M.B.H. v. Case Corp.*, 2007 WL 2153278, at *3 (3d Cir. July 27, 2007) ("Thus, whether Case had previously authorized its European subsidiaries to act on its behalf is not relevant to whether an agency relationship existed with regard to the Golden Grain transaction.").

To survive a motion to dismiss, a complaint must set forth "enough facts to raise a reasonable expectation that discovery will reveal evidence of" an agency relationship. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S.

6

544, 569 (2007)). A plaintiff "must allege facts sufficient to allow such a relationship to be proven at trial, but it is not required to have extensive proof at the complaint stage." *Jurimex*, 65 F. App'x at 808 (citing *In re Craftmatic Sec. Litigation v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989) ("[P]laintiffs cannot be expected to have personal knowledge of the details of corporate internal affairs [at the pleading stage].")).

The Third Circuit has held that "discovery is necessary when an agency relationship is alleged, thereby implicitly allowing allegations of agency to survive a facial attack." *Jurimex*, 65 F. App'x at 808 (finding an amended complaint sufficiently alleges an agency relationship where "Jurimex has alleged that its past dealings with Case have involved its subsidiaries as agents in the same manner as the present and has alleged or produced affidavits evincing financial control of the transaction by Case, not its subsidiaries.").

Again, Plaintiffs' Complaint pleads a complicated and intertwined relationship between Defendants, specifically alleging they "were integrated and each actively participated in the business practices about which Plaintiffs complain." (Compl., ECF No. 1 ¶¶ 9–12). In light of the Third Circuit's direction to allow discovery where an agency relationship is alleged, this Court finds Plaintiffs' allegations against Avis and ABG sufficient at this stage.[2]

---

[2] This is, admittedly, a close call as Plaintiffs' allegations are more akin to an alter ego theory of liability and allege agency only by the slimmest of margins. The Court is aware of other cases in which agency claims were dismissed for failure to explain the effect of the alleged inter-related relationship as to the contractual transaction at issue in the case. *See e.g., Slack v. Suburban Propane Partners, L.P.*, No. 10-2548, 2010 WL 5392845, at *14 (D.N.J. Dec. 22, 2010) (dismissing claims where "Plaintiffs have simply alleged no facts whatsoever, regarding their past dealings with the parent and/or subsidiary or otherwise, which would raise their right to relief under this [agency] theory above the speculative level."). This Court relies heavily on the Third Circuit's direction to permit discovery when agency theory is alleged. However, Plaintiffs will be required to provide much more detailed factual allegations supported by evidence to survive a summary judgment motion.

### B. Count I (Breach of Contract)

Defendants contend that Plaintiffs' breach of contract claim should be dismissed because Plaintiffs have not alleged the existence of a contract nor identified the essential terms—i.e., price—of any such contract. (Def. Br., ECF No. 17-1 at 7). The Court disagrees and denies Defendants' Motion as to Count I.

To state a claim for breach of contract under New Jersey law, a plaintiff must allege "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007). A plaintiff can assert the existence of an express contract by laying out its terms verbatim in the complaint, attaching a copy . . . or pleading its existence according to its legal effect." *Latraverse v. Kia Motors of Am., Inc.*, No. 10-6133, 2011 WL 3273150, at *2 (D.N.J. July 27, 2011).

Indeed, this Court has specifically addressed and rejected Defendants' argument:

> Under the Federal Rules, a plaintiff is not required to include the contract with the complaint, or allege the specific provisions violated in the contract. Also, the complaint does not need to resort to formulaic recitation of the elements of the alleged contract; rather, the complaint must allege facts sufficient to place the defendant on notice of the contract claim in such a way that the defendant can reasonably respond.

*Latraverse*, 2011 WL 3273150, at *2 (internal quotations and citation omitted); *see also On Location, Inc. v. Popovich*, No. 22-00893, 2023 WL 2674843, at *5 (D.N.J. Mar. 29, 2023) ("While On Location did not attach the Commission Agreement or recite its terms, it referenced it by name and pled sufficient facts for Defendant to be on notice as to which agreement was at issue and how he allegedly breached it.").

Plaintiffs here did not attach a contract or plead its terms verbatim but made clear that they

8

signed agreements with Defendants. The Complaint alleges that "[t]he form agreement memorializing Plaintiffs' and Class members' car rental transactions represented that Defendants would procure ALI/SLI coverage from a third-party insurer as part of the rental transaction." (Compl., ECF No. 1 ¶ 18). Plaintiffs also allege that Defendants' actual practice—not obtaining ALI/SLI insurance but rather indemnifying a customer for liability should it arise—was "not contained in any applicable rental agreement binding upon Defendants." (Compl., ECF No. 1 ¶¶ 19–20). As for breach and damages, Plaintiffs allege that the Defendants did not provide the ALI/SLI coverage for which Plaintiffs contracted and paid. (Compl., ECF No. 1 ¶¶ 36–38). These allegations are sufficient in that they establish there was a contract in existence and place Defendants on notice of the terms of the contract and amount of damages that flow from its breach.

Defendants also argue that Plaintiffs' breach of contract claim should be dismissed because they failed to allege the essential terms of the contract, namely, the price, (Def. Br., ECF No. 17-1 at 7), citing *Baer v. Chase*, for the proposition that "New Jersey law deems the price term, i.e., the amount of compensation, an essential term of any contract." 392 F.3d 609, 619 (3d Cir. 2004). Defendants are correct that price is an essential term for contract formation, but this is not an appropriate challenge at this stage of the litigation.[3] *See Innospec Fuel Specialties, LLC v. Isochem N. Am., LLC*, No. 10-1642, 2010 WL 11570284, at *4 (D.N.J. Aug. 23, 2010) ("The Court will not assume, upon a motion to dismiss, that the contract will be found to be valid and enforceable."). Plaintiffs have alleged the existence of a valid and enforceable contract which is enough for the claim to survive a motion to dismiss. Any challenge to the enforceability of the contract is better

---

[3] Notably, the case on which Defendants rely for this argument, *Baer*, was decided at the summary judgment phase following discovery regarding the alleged contract at issue. 392 F.3d at 619.

9

suited for summary judgment with the added benefit of the actual language of the alleged agreements and any related evidence adduced during discovery.[4]

Thus, Defendants' Motion is denied as to Count I.

### C. Count II (Fraudulent Misrepresentation)

Defendants contend that Plaintiffs' fraudulent misrepresentation claims are barred by the economic loss doctrine. (Def. Br., ECF No. 17-1 at 10). Because Plaintiffs' tort claims are founded in the contractual relationship with Defendants—and they have not provided an independent duty owed beyond that of the contract terms—the Court agrees and will dismiss Count II.

The economic loss doctrine "bars a plaintiff from recovering in tort for damages resulting from the failure of a defendant to perform under a contract." *Tidman v. Eminence Hardscapes, LLC*, No. 22-5441, 2023 WL 3224594, at *5 (D.N.J. May 3, 2023) (citing *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir. 1995) (explaining that New Jersey forbids recovery under a theory of fraud where a counterparty simply promises to perform a contract but ultimately fails to do so)). There are, however, exceptions to the general rule where "the alleged fraud is related to pre-contractual misrepresentations or is 'extrinsic to the performance of the contract,' in other words, fraud in the inducement." *Id.* (quoting *D&D Assoc., Inc. v. Bd. of Educ. of N. Plainfield*, 2007 WL 4554208, at *27 (D.N.J. Dec. 21, 2007)). "The question then is whether the alleged fraud amounts to a breach of a contractual duty and is therefore intrinsic and barred, *id.*, or 'if it breaches a duty separate and distinct from the performance of the agreement's terms.'"

---

[4] The Court is further perplexed by the premise of Defendants' argument: as the Court reads it, Defendants are challenging the enforceability of the rental agreements based on a failure to reach the essential term of price. However, this argument, if successful, would render their own rental agreements, which they presumably drafted themselves, unenforceable for vagueness which seems an absurd result.

10

*Zurich Am. Ins. Co. v. Asphalt Paving Sys., Inc.*, No. 22-01535, 2023 WL 179962, at *4 (D.N.J. Jan. 13, 2023) (*citing USI Int'l, Inc. v. Festo Didiactic, Inc.*, No. 15-08451, 2022 WL 345086, at *3 (D.N.J. Feb. 4, 2022)).

The fraudulent misrepresentation relied on by Plaintiffs here does not fall within the exception. Plaintiffs allege that "they relied on Defendants' promise, which Defendants never intended to honor, to provide the Plaintiffs, as part of their rentals, with ALI/SLI coverage from an insurance carrier." (Pla. Br., ECF No. 30 at 10). This is the exact term that Plaintiffs allege was contained in the rental agreement and was breached by Defendants. Compare the factual allegation for breach of contract:

> Plaintiffs and Class Members entered into rental contracts with Defendants, whereby Plaintiffs and Class Members paid for ALI/SLI coverage to be provided by authorized third-party insurance carriers. Notwithstanding Defendants' promise to provide said coverage and the Plaintiffs and Class Members payment for such coverage, said coverage was not provided[,]

(Compl., ECF No. 1 ¶ 36), with the factual allegations for fraudulent misrepresentation:

> Defendants' practice is a knowing false statement of material fact with the intention that Plaintiffs and the Class Members purchase the promised ALI/SLI coverage and Plaintiffs and the Class Members acted in reliance upon the misrepresentation by renting Defendants' vehicles and paying for the promised coverage.

(Compl., ECF No. 1 ¶¶ 40–41). These allegations are essentially identical. This is not a situation where "pre-contractual statements were misrepresentations on which Plaintiff relied to enter into an agreement." *Tidman*, 2023 WL 3224594, at *5 (permitting a claim for fraudulent misrepresentation to proceed alongside a breach of contract claim where plaintiff alleged that—before signing a contract—contractors represented to plaintiff that they were "authorized dealers" to induce the plaintiff to hire their services). Rather, the same statement is the basis for both the

11

contract and fraud claims. It is, therefore, impossible to determine where Plaintiffs' contract claim ends and their fraud claim begins—"[a]nd that is precisely the scenario that the economic loss doctrine has been developed to avoid." *Zurich*, 2023 WL 179962, at *4.

Thus, for all these reasons, Plaintiffs' fraudulent inducement claims are not extrinsic to the contract claims and are therefore barred by the economic loss doctrine. The Court will dismiss Count II without prejudice.

### D. Count III (Violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA))

Defendants argue that Plaintiffs' FDUTPA claims are not sufficiently pled under Rule 9(b)'s heightened pleading standard and are duplicative of their breach of contract claims. (Def. Br., ECF No. 17-1 at 11). The Court agrees and will dismiss Count III.

"While conduct constituting a breach of contract may be actionable under FDUTPA, a breach of contract claim without significant allegations of unfair or deceptive conduct is insufficient to state a cause of action under the FDUTPA." *Grossman v. Porter, Inc.*, No. 09-81600, 2011 WL 13268864, at *5 (S.D. Fla. July 14, 2011) (citing *PNR, Inc. v. Beacon Property Management, Inc.*, 842 So.2d 773, 777 n.2 (Fla. 2003)); *see, e.g.*, *Willard v. Home Depot, U.S.A., Inc.*, 2009 WL 1884395, at *2 (N.D. Fla. 2009) ("Plaintiff cannot transform a mere breach of contract claim into a claim of unfair or deceptive conduct under FDUTPA.").

First, to the extent that Plaintiffs allege that Defendants misled consumers and pocketed the additional money charged for ALI/SLI insurance with no intention to provide same as a part of a deceptive, "illegal" scheme, their bald accusations are wholly conclusory and insufficient to state a cognizable FDUTPA claim. *See Hogan v. Praetorian Ins. Co.*, No. 17-21853, 2018 WL 8266803, at *11 (S.D. Fla. Jan. 11, 2018) (collecting cases).

12

Second, it is clear from the factual allegations in the Complaint that Plaintiffs' FDUTPA claim is nothing more than a reiteration of their breach of contract claim. Plaintiffs contend that:

> Plaintiff Hughes and consumers in the Florida Class have been aggrieved by Defendants' unfair and deceptive practices and acts of false advertising because in paying the cost of the ALI/SLI policies promised but not delivered by Defendants in connection with the rental of Defendants' vehicles, Plaintiff Hughes and the Florida Class Members have parted with money under false pretenses.

(Compl., ECF No. 1 ¶ 49). This is the precise contract violation alleged earlier in the Complaint and does not present the "significant allegations of unfair or deceptive conduct" for which the FDUTPA provides a remedy. *Grossman*, 2011 WL 13268864, at *5; *see Hache v. Damon Corp.*, 2008 WL 912434, at *2 (M.D. Fla. 2008) ("Upon review of the Complaint, the Court agrees that Plaintiffs' FDUTPA claim alleges nothing more than breach of the subject warranties. As Plaintiffs have failed to allege significant deception or malice on the part of Defendants, their allegations are insufficient to state a claim under FDUTPA.").

A District Court in Florida addressed a near identical situation and came to the same conclusion. In *Willard v. Home Depot, U.S.A., Inc.*, a plaintiff brought a claim for both breach of contract and violation of the FDUTPA alleging that Home Depot charged customers who purchased hot water heaters an additional fee to obtain a permit but failed to secure said permits. 2009 WL 1884395, at *1. The Court noted that "Plaintiff's allegation that Home Depot's motive was to collect the fee and never pay it is wholly conclusory and is therefore insufficient to survive a motion to dismiss," and Plaintiff cannot "transform a mere breach of contract claim into a claim of unfair or deceptive conduct under FDUTPA." *Id*. at *1–*2 (citation omitted).

This is precisely what happened here—customers contracted for a benefit that was not provided. To the extent that Plaintiffs contend that Defendants are engaging in some "illegal,

13

unauthorized insurance" scheme to induce clients to rent cars from them, they provide no factual allegations to bring their claim beyond mere speculation. Rather, the allegations as to FDUTPA appear to be a straightforward intentional breach of contract—the misrepresentation and injury to Plaintiffs remain the same: they were promised ALI/SLI insurance, but not actually provided with ALI/SLI insurance. The Court will dismiss Count III without prejudice.

### E. Motion to Strike Plaintiffs' Class Allegations

Defendants further move to strike Plaintiffs' class allegations, alleging that the classes do not meet the Rule 23(a) requirement of ascertainability because Plaintiffs failed to plead time limitations for the proposed classes. (Def. Br., ECF No. 31 at 13–16). The Court finds these issues better suited for the summary judgment stage and will deny Defendants' Motion.

Courts have "considerable discretion" in deciding a Rule 12(f) motion but should exercise that discretion to strike class allegations "only when no amount of discovery or time will allow for plaintiffs to resolve deficiencies in class definitions under Rule 23." *McPeak v. S-L Distribution Co., Inc.*, No. 12-348, 2014 WL 4388562, at *3–*4 (D.N.J. Sept. 5, 2014); *see Clark v. McDonald's Corp.*, 213 F.R.D. 198, 205 n.3 (D.N.J. 2003) (explaining that a motion to strike class allegations prior to discovery is appropriate only in "those rare cases where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met"). "Further, sometimes the class can be better defined after discovery 'by refining the class definition rather than by flatly denying the certification.'" *Landy v. Nat. Power Sources, LLC*, No. 21-00425, 2022 WL 797967, at *4 (D.N.J. Mar. 16, 2022) (quoting *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012)).

Here, it is not clear from the Complaint that Plaintiffs' alleged classes are not ascertainable.

14

Defendants have not provided any case law from in this District or otherwise that stands for the proposition that the failure to include a temporal limitation on a class definition is inherently insufficient, particularly at this stage of the litigation. In fact, the secondary source they provide notes that the "failure to propose an appropriate time limitation in defining the class period *usually* will result in a finding that the class is impermissibly overbroad and not ascertainable," 1 McLaughlin on Class Actions § 4:2 (18th ed.), and all three out-of-circuit cases they cite were decided at the class certification stage, not a motion to dismiss. *Royal Park Investments SA/NV v. Deutsche Bank Nat'l Trust Co.*, 2017 WL 1331288, at *1 (S.D.N.Y. 2017) (resolving a motion to certify class); *In re Sears, Roebuck & Co. Tools Marketing and Sales Practices Litigation*, 2007 WL 4287511, at *1 (N.D. Ill. 2007) (same); *Clay v. American Tobacco Co.*, 188 F.R.D. 483, 485 (S.D. Ill. 1999) (same).

Defendants' argument is more appropriate at the class certification stage and, therefore, the Court will deny the Motion to Strike. *See Gray v. BMW of N. Am., LLC*, 22 F. Supp. 3d 373, 386 (D.N.J. 2014) ("Motions to strike class allegations from a pleading are disfavored because a motion for class certification is a more appropriate vehicle for arguments about class propriety.").

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss, (ECF No. 17), is **GRANTED in part** and **DENIED in part**; Counts II and III are dismissed without prejudice. Defendants' Motion to Strike (ECF No. 17) is **DENIED**. An appropriate Order accompanies this Opinion.

*/s/ Christine P. O'Hearn*
**CHRISTINE P. O'HEARN**
**United States District Judge**